UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA and STATE OF LOUISIANA** | **CIVIL ACTION NO. 2:08-cv-00893** |
| **VERSUS** | **JUDGE HAIK** |
| **CITGO PETROLEUM CORP.** | **MAGISTRATE JUDGE HANNA** |

*RULING ON MOTIONS TO COMPEL*
*(Rec. Doc. 74 & 75)*

*RULING ON MOTION TO QUASH DEPOSITIONS*
*(Rec. Doc. 87)*

*RULING ON CROSS-MOTION FOR EXPERT DEPOSITION SCHEDULE*
*(Rec. Doc. 91)*

Before the court are defendant CITGO Petroleum Corporation's (hereinafter CITGO) motion to compel plaintiff, the State of Louisiana, to respond to discovery requests (Rec. Doc. 74) and defendant CITGO's motion to compel plaintiff, the United States of America, to respond to discovery requests (Rec. Doc. 75). The motions are opposed. Oral argument was heard on April 28, 2010. Present in court representing CITGO were Edward C. Lewis and Meredith A. Cunningham, representing the United States were Jason T. Barbeau and Karen J. King, and representing the State of Louisiana was Dwana C. King. For the reasons which follow, the motions will be **GRANTED IN PART AND DENIED IN PART.**

Also before the Court are CITGO's motion to quash the United States' deposition notices concerning Dr. Jennifer Wilkie and Dr. Russell Ogle. (Rec. Doc. 87) and the United States' cross-motion for an expert deposition schedule (Rec. Doc. 91). The parties resolved the disputes underlying these two motions, and these two motions will be **DENIED AS MOOT**.

## Background and Argument

In June 2006, oil was released from CITGO's Lake Charles refinery into the Calcasieu Ship Channel. In this lawsuit, the United States and the State of Louisiana seek civil penalties and recoupment of the cost of the state's response to the release. The parties stipulated in their Rule 26(f) report that this suit does not seek the recovery of damages for injury to natural resources. The parties are engaged in a parallel, ongoing Natural Resources Damage Assessment ("NRDA") with a goal of amicable resolution of the natural resource damage claims. CITGO now seeks to compel the production of documents from the State (Rec. Doc. 74) and from the United States (Rec. Doc. 75) relating to the environmental and natural resources damages caused by the oil spill.

## Discussion

CITGO filed two motions, one directed to the State of Louisiana and the other directed to the United States, pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking the production of information concerning the environmental damage that allegedly resulted from the subject oil spill.

### A.   CITGO's Motion Regarding the State

CITGO seeks to compel the State of Louisiana to produce (a) all correspondence with, or other documents in the possession of, the state's agencies, including but not limited to the Louisiana Oil Spill Coordinator's Office ("LOSCO"), regarding the NRDA relating to

environmental damage allegedly caused by the oil spill that is the focus of the litigation; and (b) all such documents from all state agencies.

The State's complaint is brought through the Department of Environmental Quality ("LDEQ."). The undersigned finds that LDEQ cannot compel the production of documents by other state agencies and may have no standing to object on behalf of other state agencies to discovery requests directed to the other agencies. Thus, to the extent that CITGO seeks to compel the production of documents by state agencies other than LDEQ, the undersigned is unable, within the context of this motion, to grant the relief requested and the motion to compel will be denied in this regard.

In its motion to compel, CITGO also seeks a declaration that the stipulation in the parties' Rule 26(f) report is void for lack of good faith on the part of the State. This will be discussed below.

The substance of the motion directed to the State centers on the following discovery requests, in which CITGO seeks the production of:

>REQUEST NO. 39:   All documents prepared or received by Plaintiff [the State of Louisiana] that refer or relate to the cleanup or recovery of oil allegedly discharged during the Event, including, but not limited to, all reports (whether draft, interim, or final), press releases, notes, calculations, or analyses.

>REQUEST NO. 40:   All documents prepared or received by Plaintiff [the State of Louisiana] that refer or relate to environmental or property damage allegedly caused by the Event, including, but not limited to, all reports (whether draft, interim, or final), press releases, notes, calculations, or analyses.

>REQUEST NO. 41:   All documents prepared or received by Plaintiff [the State of Louisiana] that refer or relate to CITGO's efforts to minimize or mitigate the effects of the Event, including, but not limited to, all reports (whether draft, interim, or final), press releases, notes, calculations, or analyses.

Even more particularly, CITGO explained in its briefing that it is seeking the production of correspondence between the State and others engaged in the ongoing NRDA.

The State objected on two bases. First, the State argued that CITGO's motion to compel should be denied because it was filed too late. Second, the State argued that the documents sought to be produced are subject to the work product privilege and, therefore, are protected from disclosure.

### B.   CITGO's Motion Regarding the United States

CITGO filed a motion (Rec. Doc. 75) seeking to compel the United States to produce all previously withheld documents regarding the aspects of environmental or natural resources damages that its expert, Jacqueline Michel, alleges was caused by the subject oil spill. The United States has withheld from production documents generated during the NRDA on the basis that they are protected by the work product privilege. The United States also instructed several deponents not to answer questions that sought NRDA-related information. The substance of this motion centers on discovery request No. 17, which CITGO directed to the United States and in which CITGO requested that the United States produce:

> REQUEST NO. 17:   All documents, including without limitation documents prepared or received by Plaintiff [the United States] or any Federal Agency, that refer or relate to environmental, natural resource or property damage allegedly caused by the Event, including, but not limited to, all reports (whether draft, interim, or final) press releases, notes, calculations, or analyses.

The United States argued, in its opposition memorandum, that the documents sought by CITGO are protected by the work product privilege, that the documents sought are protected

from disclosure by the parties' stipulation, and that the documents impermissibly seek the opinions of the United States' expert witnesses.

C.      **The Parties' Stipulation**

In their Rule 26(f) report, the parties included a stipulation which states in pertinent part that: "In the event an administrative or judicial proceeding is initiated by the United States or the State of Louisiana for natural resource damages resulting from the oil spill, CITGO will not assert, and may not maintain, any defenses or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses...."

CITGO seeks a declaration that the stipulation is void due to the State's and/or United State's alleged bad faith failure to participate in efforts to amicably resolve the natural resource damage claims. However, there is no motion before the Court beyond the motions to compel referenced herein. Consequently, to the extent that CITGO seeks a declaration that the referenced stipulation is void, the undersigned cannot grant the relief requested absent a formal motion, briefing, etc.

The United States argues that this stipulation precludes from disclosure the documents now sought in CITGO's motion to compel. The undersigned cannot reasonably interpret the stipulation as the United States suggests. To the contrary, the undersigned finds that the parties' stipulation does not necessarily limit discovery in this lawsuit on the issues of environmental harm. Rather, the stipulation precludes the assertion of certain defenses that might otherwise be available given that the natural resource damage claims are not yet being asserted.

### D.      The Timing of the Motion to Compel

The State argues that CITGO's motion should be denied because it was not filed earlier. The undersigned finds that this argument lacks merit. Expert discovery is ongoing in this lawsuit for which the undersigned finds the requested materials may contain information which "appears reasonably calculated to lead to the discovery of admissible evidence" under Rule 26. Therefore, the request is not time barred.

### E.      The Work Product Privilege

Both the State and the United States argue that the documents sought by CITGO are protected from disclosure by the work product privilege.

The scope of permissible discovery is broad. Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." In this lawsuit, the State alleges that CITGO is liable under La. R.S. 30:2025 for a civil penalty of not more than the State's cost for its response to the oil spill plus an additional civil penalty if it is established that CITGO intentionally, willfully, or knowingly violated the statue or if the oil spill caused irreparable or severe damage to the environment or if it endangered human life or health. (Rec. Doc. 1, ¶27). Thus, the nature and extent of the damage ultimately determined to have been caused by the spill will directly affect the amount, if any, of the civil penalty ultimately assessed. For that reason, the undersigned finds that the information

requested in CITGO's discovery requests directed to the State, particularly in Request for Production Nos. 39, 40, and 41, is relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, CITGO's motion will be granted to the extent that it seeks to have the State produce unprivileged documents concerning the environmental, natural resource, and/or fish/wildlife harm that allegedly resulted from the subject oil spill other than the draft reports of the State's experts. More particularly, CITGO's motion will be granted with regard to the information sought in Request for Production Nos. 39, 40, and 41. Still more particularly, CITGO's motion will be granted with regard to unprivileged correspondence between LDEQ and/or LOSCO and any other persons or entities with regard to the NRDA investigation or the environmental damage that allegedly resulted from the subject oil spill. As noted above, however, the State is not required to produce the draft reports of any of its experts.

The State will have thirty days from the date of this ruling to produce the responsive documents.

In this lawsuit, the United States alleges that the oil spill violated the Clean Water Act and specifically alleges that CITGO is liable for civil penalties under Section 311(b)(7)(A) of the Clean Water Act (Rec. Doc. 1, ¶10). Determining the amount of such a penalty is based, in part, on "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge."[1] The lengthy report of Dr. Jacqueline Michel dealing with environmental harm contains multiple references to the NRDA and many of her opinions have factual bases which may be confirmed, contested or otherwise challenged with information sought by the discovery request. Consequently, the undersigned finds that the nature and extent

---

[1] 33 U.S.C. §1321(b)(8).

if the environmental, natural resources, and/or fish/wildlife harm caused by the oil spill is relevant to this lawsuit and further finds that the requested documents are reasonably calculated to lead to the discovery of admissible evidence on this issue.

For that reason, the undersigned finds that the information requested in CITGO's Request for Production No. 17, is relevant and likely to lead to the discovery of admissible evidence. Therefore, CITGO's motion will be granted to the extent that it seeks to have the United State produce unprivileged documents concerning the environmental, natural resources, and/or fish/wildlife harm that allegedly resulted from the subject oil spill other than the draft reports of the United State's experts. More particularly, CITGO's motion will be granted with regard to the information sought in Request No. 17. Still more particularly, CITGO's motion will be granted with regard to unprivileged correspondence between any federal agencies and/or any other persons or entities with regard to the NRDA investigation or the environmental damage that allegedly resulted from the subject oil spill. As noted previously, however, the United States is not required to produce the draft reports of any of its experts.

The United States will have thirty days from the date of this ruling to produce the responsive documents.

The United States argued that it would be unduly burdensome to comply with the subject discovery request. However, counsel for the Government admitted the search to be undertaken could be done electronically and that the greater concern was having to prepare a lengthy privilege log for documents the government contends would not only be privileged, but are not relevant since the NRDA claim is reserved. Aside from the fact there are alternatives to preparing a privilege log, e.g. a return agreement, the undersigned finds that the burden of

complying with the discovery request is outweighed by the likelihood that documents having probative value have not yet been produced. In other words, there is no evidence that the likely benefit of the discovery responses will be outweighed by the cost of producing the documents requested, in light of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving critical issues.[2]

Both the State and the United States argued that the documents yet to be produced are protected by the work product privilege because the NRDA process was undertaken in anticipation of litigation. It is well settled that documents prepared in anticipation of litigation are protected by the work product doctrine.[3] In the Fifth Circuit, documents are protected from discovery under the work product doctrine only when "the primary motivating purpose behind the creation of the documents was to aid in possible future litigation."[4] When determining the applicability of the work product doctrine, the nature of the document and the facts surrounding the document's creation and distribution must be considered.[5]

---

[2]  See, F.R.C.P. Rule 26(b)(2)(C)(iii).

[3]  F.R.C.P. Rule 26(b)(3), *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

[4]  *In re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

[5]  *In re Blessey Enterprises, Inc.*, 2009 WL 5915367, 1 (M.D. La. 2009), citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3rd Cir. 1993); *Chemtech Royalty Associates, L.P. v. U.S.*, 2009 WL 854358, 2 (M.D. La. 2009), citing *Martin*, 983 F.2d at 1260. See, also, *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 803 (3rd Cir. 1979).

Here, the State and the United States both argue that the documents sought by CITGO were prepared in anticipation of litigation. They argue that the NRDA process is primarily focused on developing a claim in furtherance of litigation. The undersigned is persuaded, however, that although one purpose for the creation of the information sought by CITGO was the anticipation of litigation, the information was developed, at the same time, for the equally important purpose of managing and restoring the environment and natural resources of the State of Louisiana and the United States. Furthermore, the simple fact that experts are formulating opinions that may possibly be advanced in a NRD claim does not foreclose the possibility that numerous relevant documents exist among the participating trustee agencies that would not be considered to have been prepared in "anticipation of litigation." The blanket assertion that all documents which may exist were prepared in anticipation of litigation is meritless. Consequently, the undersigned finds that the documents sought by CITGO from the State and the United States are not subject to a blanket work product privilege. To the extent specific, identifiable, documents that are being sought arguably fall within that privilege, the plaintiffs can specifically identify those documents and assert the privilege.

Therefore, if the State or the United States believes that there are documents responsive to these discovery requests that are privileged, in the absence of a return agreement or some other accommodation between the parties, the State or the United States shall produce a written log, not later than thirty days from the date of this ruling, in which each such document and the privilege asserted with regard to each such document are identified.

*Conclusion*

Having reviewed the pleadings, considered the oral argument by the parties, and analyzed the applicable law,

**IT IS ORDERED** as follows:

(1)  CITGO's motion to quash the United States' deposition notices concerning Dr. Jennifer Wilkie and Dr. Russell Ogle (Rec. Doc. 87) and the United States' cross-motion for an expert deposition schedule (Rec. Doc. 91) are **DENIED AS MOOT**.

(2)  CITGO's motion to compel the State of Louisiana to respond to discovery requests (Rec. Doc. 74) is **GRANTED IN PART AND DENIED IN PART.  IT IS ORDERED** that the State produce, not later than thirty days from the date of this motion, any and all unprivileged documents responsive to CITGO's Request for Production Nos. 39, 40, and 41. The motion is **DENIED** to the extent LDEQ is not required to obtain documents from other state agencies participating in the NRDA process, and further, that no draft reports of its expert witnesses be produced.  **IT IS FURTHER ORDERED** a privilege log, if necessary, shall be produced simultaneously, specifically identifying any documents withheld and the privilege asserted.

(3)  CITGO's motion to compel the United States to respond to discovery requests (Rec. Doc. 75) is **GRANTED IN PART AND DENIED IN PART. IT IS ORDERED** that the United States produce, not later than thirty days from the date of this motion, any and all unprivileged documents responsive to CITGO's

Request for Production No. 17. The motion is **DENIED** to the extent that no draft reports of its expert witnesses be produced. **IT IS FURTHER ORDERED** that a privilege log, if necessary, shall be produced simultaneously, specifically identifying any documents withheld and the privilege asserted.

Signed at Lafayette, Louisiana, this 29th day of April, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)